UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE GREINER,

      Plaintiff,

v.

      Case No. 2:19-cv-12479
      District Judge Nancy G. Edmunds
      Magistrate Judge Kimberly G. Altman

CADILLAC ACCOUNTS RECEIVABLE
MANAGEMENT, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

### I.  Introduction

This is a case under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*, involving text messages sent by defendant Cadillac Accounts Receivable Management, Inc., (CARM) to plaintiff Claude Greiner.  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 24).  Before the Court is CARM's motion for summary judgment.  (ECF No. 20).  For the reasons which follow, the undersigned recommends that CARM's motion be **GRANTED IN PART AND DENIED IN PART**.

## II.  Background

This suit was initially brought as a small claims action in state court.  CARM removed the case to federal court based on the federal questions at issue.  *See* ECF No. 1.

Greiner alleges that he received four text messages from CARM, sent to his personal cellular phone, that were sent by an automatic telephone dialing system (ATDS) in violation of the TCPA.  (ECF No. 15, PageID.56-57).  Later, Greiner replied to one of these messages by texting the word PAYMENT, resulting in his receipt of a fifth automated message.  (*Id*. at PageID.57).  At one point, Greiner's father saw one of the text messages in question, putting CARM in violation of the FDCPA according to Greiner.  (*Id*.).

CARM now moves for summary judgment on both of Greiner's claims.  CARM argues that the first four text messages were sent manually, not by an ATDS, and therefore in compliance with the TCPA, and that the fifth text message was sent in response to Greiner's inquiry, meeting the consent exception to the TCPA.  Further, CARM argues that it cannot be held liable under the FDCPA for Greiner's father happening to see a text message regarding Greiner's debt that was visible on Greiner's phone.  For the reasons which follow, the undersigned recommends that CARM's motion for summary judgment be denied as to the first four text messages, and granted as to the fifth text message and the FDCPA claim.

2

III.  Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists...."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  If a moving party fails to meet this initial burden, the non-moving party has no duty to present countervailing evidence; indeed, a court abuses its discretion if it grants a summary judgment motion where the moving party has not met its burden.  *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 726 (6th Cir. 2000).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446,

3

453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must ... do more than simply show that there is some metaphysical doubt as to the material facts[.] ... [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] ..." *Stansberry*, 651 F.3d at 486 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Greiner is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage,

4

... 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## IV.  Analysis

### A.  TCPA

#### 1.  General

The TCPA prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [(ATDS)] or an artificial or prerecorded voice—(iii) to any number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call...."  47 U.S.C. § 227(b)(1)(A)(iii).  An ATDS is "equipment which has the capacity—(A) to store or

5

produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Text messages are considered "calls" for purposes of the TCPA.  *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015).

The circuit courts are currently divided as to the interpretation of this definition.  The Sixth Circuit, along with the Second and Ninth, interprets 47 U.S.C. § 227(a)(1)(A) as defining an ATDS as equipment with the capacity "to store [telephone numbers to be called]; or produce telephone numbers to be called, using a random or sequential number generator."  *Allan v. Pa. Higher Educ. Assistance Agency*, 986 F.3d 567, 573 (6th Cir. 2020).  Though this reading arguably violates the last antecedent rule, competing interpretations require a strained reading of the word "store," while also rendering it superfluous within the definition.  *Id*. at 572-73.  Relying on guidance from the Supreme Court, the *Allan* court found that giving meaning to each word of the statute took precedence over a rigid application of a grammatical rule.  *Id*. (citing *Paroline v. United States*, 572 U.S. 434 (2014)).  This means that under the Sixth Circuit's interpretation of the TCPA, a system used for debt collection, such as CARM's, can be considered an ATDS if it dials from a list of stored numbers.[1]

---

[1] The Seventh and Eleventh Circuits have interpreted 47 U.S.C. § 227(a)(1)(A) to mean that "using a random or sequential number generator" applies to both the *storage* and the *production* of telephone numbers.  *See Allan*, 968 F.3d at 571. The

2.  Application

Here, the issue is whether the four text messages sent by CARM to Greiner in 2018 were sent by an ATDS, and whether the fifth message sent in January 2019[2] was consented to by Greiner.

Records submitted with CARM's motion for summary judgment indicate that Greiner was sent four unsolicited text messages in late 2018, two from Danielle Simonton and two from Audrey Morgan (née Lambert), employees of CARM.  (ECF No. 20-2, PageID.92-94).  Other than the name of the sender, the text messages are identical:

> Hi this is [Danielle/Audrey] from Cadillac Accounts Receivable, please text or call me at [phone number].  This is an attempt to collect a debt by a debt collector; any info will be used for that purpose.  Text "Stop" to opt out of SMS or "Payment" to pay online.
> Group message sent by [sender] [time and date]

The records indicate that each message was a "group message," and each contained no individualized information regarding the recipient or the alleged debt.  The

---

Supreme Court has recently granted a petition for writ of certiorari on this issue in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (Jul. 9, 2020).  *See Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606, 2020 WL 5596162, at *1 (E.D. Mich. Sept. 18, 2020) (denying defendant's motion to stay proceedings).  Until that matter is decided, this court is bound by the Sixth Circuit's interpretation of the TCPA in *Allan*.

[2] There is disagreement between Greiner and CARM regarding when this message was sent, but CARM's records indicate it was sent in January 2019.  (ECF No. 20-2, PageID.94).

7

records also indicate that a web application called "Zipwhip" was used in the sending of the messages.  (*Id*.).

As evidence to show that there is no genuine issue of material fact that Greiner cannot prevail on his TCPA claim regarding the text messages, CARM relies on affidavits from Simonton and Morgan in which they state that they sent the text messages to Greiner "manually" and not "by an automatic telephone dialing system."  (ECF Nos. 20-3, 20-4).  In addition, CARM offers an affidavit from Jon Dracht, its president and CEO, also stating that that Simonton and Morgan sent the text messages in question and that the messages were sent "manually," not by an ATDS.  (ECF No. 20-5).  None of the three affidavits mentions the Zipwhip software that Greiner argues constitutes an ATDS in his response.  (ECF No. 22, PageID.109).  In its reply, CARM does not deny the use of Zipwhip in sending the messages but argues that Greiner has failed to submit probative evidence that Zipwhip is an ATDS in support of his claim.  (ECF No. 23, PageID.135-37).

CARM is correct: Greiner has not provided sufficient evidence that Zipwhip is an ATDS in his response or affidavit.  But the initial burden is not on Greiner to support this claim.  That burden lies on the movant, CARM, to affirmatively establish that there is no genuine issue of material fact that the text messages were not made by an ATDS.  *Hunter*, 220 F.3d at 725 (district court overturned where it

erroneously "accepted [the moving party's] statement as an undisputed fact

because [nonmovants] failed to produce any evidence to rebut [movant's]

statement.").  "If a moving party fails to carry its initial burden of production, the

non-moving party has no obligation to produce anything, even if the nonmoving

party would have the ultimate burden of persuasion." *Id*. (quoting *Nissan Fire &*

*Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102–03 (9th Cir. 2000)).

CARM is limited to using *admissible* evidence to support its claim.

*Aquilina v. Wriggelsworth*, 759 F. App'x 340, 342 (6th Cir. 2018), citing Fed. R.

Civ. P. 56(c)(2).  Federal Rule of Evidence 701 governs the opinion testimony of a

lay witness not testifying as an expert:

> [I]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*United States v. White,* 492 F.3d 380, 400 (6th Cir. 2007).  Legal conclusions,

whether asserted in an affidavit or verified complaint, do not suffice to create a

genuine issue of material fact for trial.  *See Medison Am. Inc. v. Preferred Med.*

*Sys., LLC,* 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire*

*& Cas. Co.,* 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit

bypasses the specific-facts requirement of Federal Rule of Civil Procedure

56 necessary to forestalling summary judgment.").

9

CARM relies solely on the three affidavits it submitted to support the claim that the text messages in question were made manually and not by an ATDS. But the assertion by each of these lay witnesses that the messages were not sent by an ATDS is an impermissible legal conclusion, insofar as it is submitted to prove that the text message software does not meet the legal definition of an ATDS. These bare assertions, without more, do not allow the Court to make a finding as to whether an ATDS was actually used in placing the text messages at issue. Similarly, the statement that these messages were sent "manually" is wholly conclusory. The process by which Zipwhip was used by CARM to institute these text messages, which appear to have been sent to a group of individuals at one time, was not mentioned in the affidavits, leaving the Court with no insight as to the program's functionality.

Indeed, the evidence furnished by CARM is far different from evidence the parties in in similar TCPA cases furnished in seeking summary judgment. First, in *Allan*, *supra*, plaintiffs sued an agency that was using an autodialer system to place collection-related calls selected from a stored list of numbers. 968 F.3d at 570. Plaintiffs moved for summary judgment, providing evidence that they were called on 353 occasions without consent and were left at least thirty automated voice messages in connection with these calls. *Id*. Defendant responded with affidavit

testimony from its Senior Manager of Workflow and Operational Support

explaining how its calling system worked:

> [Defendant]'s system uses a calling list that is created daily by an
> automated batch process that determines what subset of accountholders
> qualifies for telephonic contact that day, based on, among other things,
> amounts owed, delinquency status and prior contacts.  The calling list
> is not randomly generated.  Each morning a new and unique calling list
> is downloaded to the Avaya equipment used in connection with making
> the calls to the accountholders who will be called based on the selection
> criteria outlined above.  A human intervenes at that point to create
> calling campaigns for the day.  Jobs are started by the person setting up
> the daily workflow.  The dialing system places the calls and connects
> them to operators when a voice is detected.

*Allan v. Pennsylvania Higher Educ. Assistance Agency*, 398 F. Supp. 3d 240, 242

(W.D. Mich. 2019), *aff'd,* 968 F.3d 567 (6th Cir. 2020).  Plaintiffs offered no

evidence as to defendant's dialing system.  Nevertheless, the district court found

that there was "no question" that defendant's system stored telephone numbers and

automatically dialed them, qualifying the system as an ATDS.  *Id*. at 244.

Plaintiffs were granted summary judgment despite defendant's evidence of human

intervention in the form of a "live person" that "created the calling campaigns for

the day," and the Sixth Circuit affirmed.  *Allan,* 968 F.3d at 570.  Here, CARM

has not sufficiently distinguished the Zipwhip system from the system in *Allan* so

as to be entitled to summary judgment.

.

Similarly, in *Lopez v. Quicken Loans, Inc.*, No. 19-13340, 2020 WL 2525938 (E.D. Mich. May 18, 2020), the court found that allegations of text messages "comprised of pre-written templates of impersonal text, … devoid of any actual human intervention in the drafting or sending of the messages …  and … sent en masse to thousands of other consumers" made it plausible that an ATDS was used.  *Lopez* at *6 (quoting *Virgne v. C.R. England, Inc.*, 2020 WL 470294, at *3 (S.D. Ind. Jan. 28, 2020)).  The *Lopez* decision was based on a motion to dismiss, not one for summary judgment, but it illuminates the type of evidence required to show that a party is not using an ATDS without consent.

Finally, in *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040 (E.D. Mich. 2018), *aff'd*, 786 F. App'x 555 (6th Cir. 2019), defendants were granted summary judgment due to a lack of evidence showing that the program used to place text messages was an ATDS.  Similar to this case, the plaintiff offered evidence in the form of Internet research to support his claim that the program at issue was an ATDS.  Defendants successfully argued that the evidence was insufficient, and that plaintiff could have conducted discovery to better support his claim but had failed to do so.  *Id.*, at 1045.  But *Gary* is distinguishable, because there, defendants "offered sworn testimony that its WorkAlert service 'lack[ed] the capability to

randomly or sequentially dial or text potential workers.' "[3] *Gary v. TrueBlue, Inc.*, 786 F. App'x 555, 556 (6th Cir. 2019), citing *Gary*, 346 F. Supp. 3d at 1044. Furthermore, defendants provided evidence that their service required "multiple steps of human intervention to send a job notification text. . . . Even when using a fixed group, branch employees must manually edit the list of workers to fit a particular job assignment, craft an outgoing text message, and then click certain keys to send a message." *Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046, at *7 (E.D. Mich. Aug. 1, 2018) (denying plaintiff's motion for summary judgment in the same matter). The court found that "[t]his level of human judgment and intervention precludes a system from falling under the definition of an ATDS." *Id.* Thus, defendants in *Gary*, unlike CARM, met their burden to provide admissible evidence that their service did not use an ATDS.

As discussed above, the record shows that shows that generic, impersonal text messages were sent to some unspecified number of people, and though sent "manually," the nature and level of human interaction involved in the sending is unknown. Based on the evidence, viewed in the light most favorable to Greiner, a reasonable jury could find that these generic and impersonal messages were sent to groups of people with minimal human intervention, in violation of the TCPA. As

---

[3] *Gary* was decided before the Sixth Circuit's decision in *Allan*, which clarified that random or sequential dialing is not required to show that an ATDS was used.

such, CARM has not met its summary judgment burden of establishing that there is no genuine issue of material fact as to whether an ATDS was used. It is therefore recommended that summary judgment be denied as to the first four text messages sent to Greiner.

However, the automated text message sent to Greiner in January 2019 in reply to his text of the word PAYMENT to CARM is something different. This message falls under the consent provision of 47 U.S.C. § 227(b)(1)(A), which states that it is unlawful "to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system" [emphasis added]. By texting the word PAYMENT in response to CARM's initial message, Greiner consented to receipt of a reply from CARM. Indeed, "[p]laintiffs would have a tough go of showing that they did not consent to receiving a message after they themselves initiated contact." *Allan*, at 579. The same is true here. As such, it is recommended that summary judgment be granted to CARM as to this text message.

## B. FDCPA Claim

### 1. General

"The FDCPA prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables the courts, where appropriate, to proscribe other improper conduct which is

14

not specifically addressed." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). To determine whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the "least sophisticated consumer." *Barany–Snyder v. Weiner,* 539 F.3d 327, 333 (6th Cir. 2008). This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices. *Id.*

### 2.  Application

CARM is correct that Greiner fails to identify a provision of the FDCPA that would hold CARM liable for Greiner's father seeing the collection-related text message on Greiner's phone. Furthermore, Greiner failed to address this issue in his response brief, which "constitutes waiver or abandonment of the argument." *Beydoun v. Countrywide Home Loans, Inc.*, No. 09-10445, 2009 WL 1803198, at *3 (E.D. Mich. June 23, 2009) (internal quotation marks and citations omitted). IT is therefore recommended that summary judgment be granted on Greiner's FDCPA claim.

### V.  Conclusion

Accordingly, for the reasons stated above, the undersigned recommends that CARM's motion for summary judgment (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART**, in accordance with this opinion.


Dated: November 9, 2020                         s/Kimberly G. Altman____
Detroit, Michigan                               KIMBERLY G. ALTMAN
                                                United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 9, 2020.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager